UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ARTHUR J. MCCABE, II,
    Plaintiff,

v.                                                                                    CIVIL ACTION NO. 17-12292-MPK[1]

CITY OF LAWRENCE AND MAYOR
DANIEL RIVERA OF THE CITY OF
LAWRENCE,
    Defendants.

MEMORANDUM AND ORDER ON
MOTION FOR SUMMARY JUDGMENT (#46).

KELLEY, U.S.M.J.

I. Introduction.

After working for the City of Lawrence (the City) for about five and one half years in the position of Community Development Manager, Arthur McCabe was laid off. He brought this suit against the City and Mayor Daniel Rivera for violation of his civil rights and for breach of an implied employment contract. (#12.)[2] Count I of the amended complaint details violations of plaintiff's rights under 42 U.S.C. § 1983, including allegations that he was laid off without cause in retaliation for his political affiliation [with a former mayor] and his work with the union, and that he was discriminated against because of his age [72], his race [white], and in spite of his

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment pursuant to 29 U.S.C. §636(c). (#27.)

[2] Plaintiff agrees that he is proceeding against the mayor in his official capacity (#43 ¶ 4), which means that he is suing the City. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Negron-Almeda v. Santiago*, 528 F.3d 15, 21 n.2 (1st Cir. 2008) ("Claims against a state official in his official capacity are treated as claims against the state."). Therefore the court refers to defendants as "the City" in this Order.

1

protected status as a veteran. (#12 ¶¶ 20, 27.) After discovery was complete, however, he entered into a stipulation with the City that he would not pursue claims based on discrimination or retaliation. (#43 ¶¶ 1, 4.) In his opposition to defendants' motion for summary judgment, plaintiff explained that discovery had not supported allegations of discrimination, and stated that his § 1983 claim was based on the theory that the City violated his Fourteenth Amendment property right to employment, because the City did not follow the rules set out in the Administrative Code of the City of Lawrence (the Code),[3] concerning the reemployment of laid off-employees. (#56 at 2-4.)[4] In other words, plaintiff is no longer disputing why he was laid off, but is complaining that he did not receive the benefit of certain procedures set out in the Code after he lost his job. In Count III, under the theory that the Code constitutes an implied employment contract, he alleges that the City breached the contract by failing to adhere to the Code. (#12 ¶¶ 34-35; #56 at 6.)[5]

Defendants move for summary judgment on Counts I and III. (#46.) They argue that the § 1983 claim must be dismissed because the claim that plaintiff was deprived of a property interest in his employment in violation of the Fourteenth Amendment is a new claim that plaintiff did not articulate in the amended complaint (#59 at 5); because the Code does not confer any federal constitutional rights on plaintiff (#47 at 3); and because plaintiff has not met the requirements of a claim under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), to show that the City has a custom or policy of failing to reemploy laid-off employees without due

---

[3] LAWRENCE, MA, CODE OF ORDINANCES (2016), attached to the defendants' statement of undisputed facts at #48-9.

[4] Plaintiff also abandoned the claims in Count II of the amended complaint, which alleged violations of Mass. Gen. L. c. 12, §§11H and 11I. (#12 ¶¶ 30-31.) *See* #56 at 2. Thus, Count II will be dismissed.

[5] The terms of plaintiff's employment were governed by a Collective Bargaining Agreement between the City and Supervisors and Administrators, *see* #48-8, but plaintiff's arguments are confined to his rights under the Code.

process. (#60 at 3-4.) Concerning plaintiff's breach of contract claim, they argue that the Code did not constitute an employment contract, and even if it did, the provisions of the Code on which plaintiff relies are inapplicable to him or, if they were, they were not breached. *Id.* at 6.

For the reasons stated below, the court finds that the City did not deviate from the rules set out in the Code in its treatment of plaintiff after he was laid off, and so allows defendants' motion for summary judgment.

I. The Facts.

The facts are culled from the amended complaint (#12), defendants' statement of undisputed facts (#48) and the attached exhibits (##48-1 through 48-10). They are undisputed except as noted.

Plaintiff was hired by the City as the Community Development Manager in 2009. (#48 ¶ 2.) In 2010, he was asked by Mayor William Lantigua to "take over the administration of the Shannon grant for at risk youth," in addition to his other duties.[6] (#12 ¶ 8.) He wrote the grant proposal for this program and served as administrator from 2011 to 2014. *Id.* Beginning in January 2012, plaintiff also wrote and administered the grant for the Safe and Successful Youth Initiative (SSYI) program and served as that program's director.[7] (#12 ¶ 9; #48 ¶ 8.)

After Mayor Rivera was elected in 2014, the City transferred management of the SSYI program to an outside non-profit agency, the Lawrence Family Development and Education Fund, and transferred management of the Shannon grant to the Lawrence Police Department, which

---

[6] The Shannon grant is "a youth grant from the Commonwealth of Massachusetts' Executive Office of Public Safety and Security … which is directed at low-to-moderate income kids on the cusp of dropping out of school and getting those kids involved with after-school programs or other social service agencies." (#48 ¶ 5.)

[7] The SSYI program is "an anti-gang program that targets young gang-involved males ages 16 to 24, who are most likely to commit murder or be murdered themselves." (#48 ¶ 7.)

previously had administered the grant. (#12 ¶¶ 10, 17, 19; #48 ¶¶ 15–16.) At the time the grants were transferred, they funded 78% of plaintiff's salary. (#48 ¶ 17.) Because of the "significant loss of grant management responsibilities, and the loss of the grant money from which Plaintiff's salary was funded," the mayor decided that plaintiff should be laid off in October 2014. (#48 ¶¶ 18–20.)

Section 4-6.1 of the Code provides that "[p]ermanent employees who are laid off shall be given first consideration for subsequent vacancies in the class from which laid off for a period of one year." "Class" is defined in § 4-12.1 of the Code as "[a] position or group of positions which are sufficiently similar with respect to duties, responsibilities, and authority that they may properly be designated by the same title, and equitably compensated from the same pay range under substantially the same employment conditions."

Frank Bonet, the personnel director of the City, was deposed as the City's Rule 30(b)(6) designee. (#48 ¶ 26.) He testified that for purposes of § 4-12.1 of the Code, the "class" from which the plaintiff was laid off is comprised of manager-level positions in the City's Community Development Department. (#59-2 at 10: "[Plaintiff] was a manager.  He was in community development.  That would be his classification.") Mr. Bonet states in an affidavit that "[t]here was no vacancy created in any manager level position within the City's Department of Community Development within the one-year period following [plaintiff's] becoming laid off from his position of Community Development Manager in October 2014"; the City did not seek to hire anyone "for any such position" during that year; and plaintiff did not apply for any position with the City during the year following his lay off. (#59-3 at 1.)

Another part of the Code that looms large in plaintiff's claims is § 4-8.1(D), entitled "Effect of Abolition of Position," which states:

> A position may be abolished or the number of personnel reduced for reasons of economy or of reorganization. Every effort shall be made by the city to reassign the

4

affected employee to another open position for which the employee may be qualified. If no such position is available immediately, the name of the affected employee shall be kept on a special reemployment list and said employee shall be given first preference in any position for which he or she is qualified.

At his deposition, Mr. Bonet testified that § 4-8.1(D) did not apply to plaintiff, because plaintiff's position was not abolished. (#48-6 at 3.) Defendants' undisputed statement of facts states that "[a]bolition of a position means that the position is taken off the City's books and can never be filled, which requires official action by the City Council." (#48 ¶ 27.) Mr. Bonet stated at his deposition that with regard to plaintiff, the City "did nothing to create a reemployment list as mandated by [§ 4-8.1(D)]" and plaintiff "would not get special consideration for applying for jobs" because "his position was not abolished so he doesn't get any other benefits for that paragraph itself." (#48-6 at 3-4, 8–10.) When asked specifically what he thought the phrase "or the number of personnel reduced" meant, and whether the requirements of the section might apply to plaintiff because the number of personnel in his position had been reduced (from one to none), Mr. Bonet reiterated that "[t]he whole entire paragraph speaks to the effect of the position being abolished," and therefore none of the provisions in it applied to plaintiff. *Id*. at 6.

### III. Legal Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of averring the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). Once the moving party asserts the absence of genuine issues of material fact, the non-movant must demonstrate the existence of a factual dispute with requisite sufficiency to proceed to trial. *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (citing *Ingram*

5

*v. Brink's, Inc.*, 414 F.3d 222, 228–229 (1st Cir. 2005)). However, ". . . improbable inferences, conclusory allegations, or rank speculation . . ." cannot alone defeat summary judgment. *Ingram*, 414 F.3d at 229.

In determining whether summary judgment is proper, the record must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in the non-movant's favor. *Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 56 (1st Cir. 2018). Upon a party's motion, Rule 56 requires the entry of summary judgment where a party fails to establish the existence of any one essential element on which that party will bear the final burden of proof. *Brown v. Latin Am. Music Co.*, 498 F.3d 18, 22 (1st Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (further internal quotation marks omitted)).

IV. Discussion.

A. Count I.

1. 42 U.S.C. § 1983.

Section 1983 creates a cause of action against persons who, under color of state law, deprive a United States Citizen of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Fourteenth Amendment forbids taking an individual's "property, without due process of law." U.S. Const. amend. XIV, § 1. Public employees may be found to have a property interest in continued employment, including the right to be recalled after losing their jobs. *See Clukey v. Town of Camden*, 717 F.3d 52, 56-58 (1st Cir. 2012).

2. <u>The City Did Not Fail to Follow the Rules Set Out in the Code</u>.

The court need not address defendants' arguments concerning whether the § 1983 claim was adequately pled, whether the Code bestows federal due process property rights on plaintiff, or whether the plaintiff has met the requirements of a claim under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), to show that the City has a custom or policy of failing to reemploy laid-off employees without due process, because even if all these questions were answered in favor of plaintiff, he has not shown that the City failed to follow the rules set out in the Code following his lay off. Thus, any arguments concerning violations of his rights fail.

Section 4-6.1 of the Code provides that "[p]ermanent employees who are laid off shall be given first consideration for subsequent vacancies in the class from which laid off for a period of one year." Mr. Bonet, the personnel director of the City, testified that there were no vacancies in the class from which plaintiff was laid off in the year after he left employment. (#59-3 at 1.) Plaintiff has offered no evidence to the contrary. He cannot complain that the City failed to follow the Code with respect to § 4-6.1.

Section 4-8.1(D), concerning the abolishment of positions, did not apply to plaintiff. As Mr. Bonet stated, plaintiff's position was not abolished. (#48-6 at 3.) The fact that the section contained the phrase "or the number of personnel reduced" is plainly a reference to the abolishment of a number of the same positions, but not all of them.[8] If one reads the section as plaintiff seems to, namely, that all the enumerated obligations to reemploy workers apply any time a worker is

---

[8] For example, on the personnel chart submitted by defendants, plaintiff's position, Community Development Manager, has two identical positions situated below it: "CD Project Off I" (presumably, "Community Development Officer I") and "CD Project Off II." (#48-10.) If one of these positions was abolished, then it would mean that the "number of personnel" was reduced, not that the position was entirely abolished.

laid off, regardless whether his or her position is abolished, then the reference to abolishment of positions is rendered meaningless. Further, § 4-6.1, which gives laid-off employees "first consideration" for vacancies in their class, would be redundant.

    B.  <u>Count III – Breach of Contract</u>.

Count III alleges that "[the City] had procedures and policies, as set forth in [the Code], establishing implied contracts with its employees," and that the City's failure to reassign or re-employ plaintiff was "in violation of [the City]'s own procedures and policies, . . . thereby breaching its contract of employment with [plaintiff]." (#12 ¶¶ 34–35.) The court will not decide whether the Code constituted an employment contract, because even if it did, for the reasons set out above, the City did not breach it.

V. <u>Conclusion</u>.

For the reasons stated, the Motion for Summary Judgment (#46) is ALLOWED and all counts of the amended complaint are dismissed. Judgment shall enter for defendants.

July 8, 2019                                              <u>/s/ M. Page Kelley</u>
                                                                          M. Page Kelley
                                                                          United States Magistrate Judge